Ruffner, &c., v. Ridley, &c.

Case 28—EQUITY—May 19, 1883.

# Ruffner, &c., v. Ridley, &c.

APPEAL FROM TODD CIRCUIT COURT.

1. The suppression of the truth is as vicious and disastrous as if a false representation had been expressly made. In either case the motive is the same, and the result should be similar, since it is the intention that constitutes the fraud.

2. In the sale of land, when there has been an innocent and mutual misapprehension as to the quantity conveyed, where the contract has been executed, the purchaser may be reimbursed, if the deficiency is so great that the chancellor can determine that the parties did not contemplate it, and where the deficiency is so large as to amount to a failure of consideration for the purchase, the court will direct a rescission.

3. Where the contract is made by reason of the fraudulent representations of the vendor in regard to a material matter constituting an inducement to the contract, the chancellor will rescind if the parties can be put in *statu quo*, if not, he will adjudge compensation to the party injured.

B. T. PERKINS, G. TERRY, and WM. LINDSAY for appellants.

1. Fraudulent representations of a vendor as to the number of acres in a tract of land conveyed, where the vendor obtains the exact boundary bargained for, will not authorize a rescission of an executed contract, unless the deficit so far affects the whole subject-matter of the contract as that the chancellor can properly adjudge that the vendee would not, if he had been aware of the actual quantity, have made the purchase.

2. If the chancellor apply the rule that those who seek his aid must come into court with clean hands, ready to correct mistakes and to do exact justice, it is clear that appellees ought not to have the relief adjudged to them. (2 Ga., 442; McCann v. Delany, 3 Bibb, 46; Grant v. Combs, 6 J. J. Mar., 280; 2 Bibb, 567; *Ib.*, 270; 6 J. J. Mar., 210; 5 Mon., 154; 8 B. Mon., 19; 3 Dana, 282; 7 Bush, 446.)

H. T. PETREE, W. L. REEVES, and E. W. HINES for appellees.

1. At and before the date of the contract and conveyance, appellants knew that one of the tracts of land was short of the quantity specified in the deed by 100 acres.

2. If the parties intended to make a certain contract, and, in fact, made another, all that a court of equity can do or ought to do is to rescind it. (Parsons on Contracts, vol. 2, 497.)

3. But this is not a case of innocent misrepresentation, but of actual fraud. The whole contract is vitiated. (Upshaw v. Debord, 7 Bush, 447; Young v. Craig, 2 Bibb, 270; Wood v. Wood, 78 Ky., 629; 47 Ver., 137; Herr on Fraud, &c., 334; Barnett v. Montgomery, 6 Mon., 333; 6 Johns., 110; 39 Texas, 177; 3 Bibb, 46.)

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

This is an action, brought by appellee, for the rescission, on the ground of fraud, of an executed contract for exchange of lands.

The terms of the agreement were: Appellant owned, in the State of Missouri, a tract of land, represented to contain six hundred and twenty-six acres, on which there was a mortgage lien for six thousand dollars; and appellee owned a tract of land in the State of Kentucky, on which there was a mortgage lien for fifteen hundred dollars. The Missouri land was to be taken at thirty dollars per acre, and the Kentucky land at forty dollars per acre, each party assuming to pay the lien on the tract received by him. Deeds were executed and delivered, and possession taken. Subsequently, this suit was instituted, seeking a rescission, on the ground that appellant had fraudulently represented the land in Missouri to contain six hundred and twenty-six acres, when, in fact, it contained one hundred acres less; and secondly, upon the ground that there was a failure of title to one acre of the land on which the dwelling was situate, which fact of defect of title was known to appellant, and fraudulently concealed from appellee. The court decreed a rescission, and the complaint is that the decree should have been for compensation.

The first question is, did appellant know of the deficiency in the land (which is shown to be about one hundred acres), and fraudulently conceal the fact from appellee?

The trade was made on the part of appellant through his agent, Grimes, whom we will treat as the principal, as the principal is bound, by the fraud of his agent, to the same extent that he would be bound by his own act.

We think the knowledge by Grimes of the deficiency, and the fraudulent concealment of that fact for the purpose of effecting the exchange, is clearly established. Grimes, a short time prior to this exchange, owned and occupied the premises, and during that ownership and occupancy he applied to the county surveyor of the county in which the land lay to have a survey of the land made. The surveyor testifies that Grimes said that the person from whom he purchased the land had swindled him, as the land was short of six hundred and twenty-six acres; that he made the survey for him and delivered to Grimes a plat of the survey. Another witness, who at one time owned the land, testifies that, prior to the trade with appellee, Grimes came to him and wanted to know what the amount of deficiency in the land was, and that he told him the deficiency was one hundred acres; and another witness then present showed Grimes a sectional map of the county, and pointed out to him the lines of his boundary, and stated and explained to him that the land was short at least one hundred acres. Another witness testifies that he heard Mrs. Grimes tell her husband that there was only five hundred and forty acres in the tract. To this there is nothing to oppose except the evidence of Grimes, who denies knowledge; but his evidence would not overturn that referred to, which is unimpeached, even if he was worthy of evidence, which we think he is not. Twenty-three witnesses testify that Grimes' reputation for truth and integrity is bad, and that, as several of them state, he is not worthy of belief on oath.

As to the fraudulent concealment of the fact that the vendor did not have title to the acre of land on which the dwelling was situated: there was a mechanic's lien on the dwelling for twelve hundred dollars, and it was represented by Grimes to be only a lien, and so treated by both parties to the trade, when, in fact, it clearly appears that the lien had been enforced, the property sold, and the legal title vested in the lien-holder, who was the purchaser at the decretal sale.

It don't matter that the evidence does not show that these representations were expressly made by Grimes. It is sufficient that the facts were within his knowledge, and that he failed to disclose them for the fraudulent purpose of inducing the trade, and that they were treated as true and relied upon by appellant. It is a case in which a suppression of the truth was as vicious and disastrous as if the representation had been expressly made. In either case the motive is the same, and, therefore, the consequences should be the same, since it is at last the intention that constitutes the fraud. (Wood v. Wood, 78 Ky.; Peebles v. Stephens, 3 Bibb; Kerr on Fraud, 94-'5.)

In the sale and purchase of land, where there is an innocent and mutual misapprehension as to the quantity conveyed, where the contract has been executed, the purchaser may be reimbursed if the deficiency is so great that the chancellor can determine from all the circumstances that the parties did not contemplate so great a deficiency; and where the deficiency is so large as to amount to a failure of consideration for the purchase, the court will direct a rescission; and where the contract was entered into by reason of the fraudulent misrepresentations of the vendor, whether the misrepresentations consist in the expression of a false-

hood or in the suppression of the truth, where there is a
duty to speak, and the misrepresentations relate to a mate-
rial matter, constituting an inducement to the contract, a
court of equity will rescind, if the circumstances are such
that the parties can be put in the condition they were in
at the time of the execution of the contract; but if these
elements do not concur, the chancellor will decree compen-
sation if the fraud is proved, and a substantial injury has
resulted therefrom.    Whenever there is fraud with a result-
ing injury of a substantial character, a court of equity will
give relief, either by rescission or pecuniary compensation.
If the injury is substantial, and it appears that it reaches to
the inducement to the contract, the contract will be rescinded
if the parties can be put *in statu quo;* but if the injury be
substantial, and yet the court can see that the thing fraudu-
lently represented to exist, and which does not exist, was
not an inducement to the purchase, compensation only will
be awarded.    If, for instance, the land is purchased with
the view of erecting a water-mill, and it is fraudulently rep-
resented that the land sold embraces a certain number of
acres, including the mill seat, and there is a deficiency,
however small, and that deficiency cuts the purchaser off
from the stream, there is a case for rescission.    So if the
land is purchased for a specific purpose, known to the
vendor, and the number of acres fraudulently represented
to exist be material to the purpose for which the purchase
was made, and the shortage, however small, goes to the
inducement to the purchase, there is a case for rescission.
Theoretically, fraud vitiates whatever it touches, but in a
practical application of this theory, the courts are constantly
meeting with insuperable difficulties.    The morale of the
rule is, that the perpetrator of the fraud shall derive no

benefit from his fraud; but it has been found necessary to direct its application to the protection of the person defrauded, rather than to the punishment of the person committing the fraud, and it is upon this idea that the law, as we have stated it, in reference to rescission and compensation, rests.

Having found the existence of the fraud, the inquiry now is: is it of such a nature as to authorize, under these rules, a rescission?

The evidence shows that Grimes assured appellee that the six thousand dollars debt, for which the Missouri land was liable, which debt was bearing ten per centum interest, could be discharged by getting the loan of money at eight per centum, secured by mortgage on the land. This representation was found not to be true because of the deficiency in the land, which reduced its value some three thousand dollars. If the quantity had been as represented, the loan could have been obtained, and the burthen of the debt so reduced that appellant may have been able to carry it to liquidation. This reaches the *inducement* to the contract, and increases the materiality of the deficiency in the land beyond its estimated value of thirty dollars per acre.

So also does the failure of title to the one acre of land, on which the dwelling is situate, become of a materiality greater than its vendible value, reaching the inducement to the contract and affecting the question as to whether appellee would have made such a contract if he had known of this defect in the title.

We are of the opinion that the court did not err in its decree rescinding the contract for the frauds indicated.

But it is insisted that there is error in this: that the court should have at the same time canceled a contract between

the parties as to the exchange and purchase of certain personal property on their respective farms.

There are two reasons why there was no error in this: first, the pleadings of appellant seek no such relief; and secondly, this contract for exchange and sale of personal property was made subsequent to the land transaction, is in no way connected with it or affected by it, unless it may be said that this trade would not have been made if the land trade had not been consummated.

Counsel for appellant also insist that this court cannot consider the effect of the failure of title to the one acre of land on which the dwelling is situate, because it was first set up in the reply, whereas it should have been by amended petition. To this we say that both the court below and the parties treated the reply as an amendment to the petition, and acted upon it on the trial and in the decree as such, and we will therefore so treat it, as the rights of the parties have been fairly and fully considered under it.

Judgment affirmed.