## Shacklette, et al. v. Goodall, et al.

(Decided December 4, 1912.)

### Appeal from Ohio Circuit Court.

1. Conveyances—Relation of Confidence and Trust—When Conveyance Will Not Be Set Aside as Fraudulent.—Where there exists between two persons a relation of confidence and trust, by which one exerts such an influence over the judgment of the other as to subvert the latter's will and independence, a conveyance by the latter to the former will be set aside as fraudulent, upon seasonable complaint.

2. Conveyances—Voluntary Conveyance—Burden of Proof.—When such relationship is shown, and a voluntary conveyance beneficial to the grantee, the burden of proving that in that transaction the other mind acted freely and of its own volition, is on the person benefited.

3. Conveyances—Conveyance in Consideration of Services Rendered—When Will Not Be Set Aside.—Where a bachelor, seventy-five years of age, conveyed a tract of land to his nephew in consideration of services theretofore rendered the grantor by his nephew, the conveyance will not be set aside after the grantor's death at the suit of his heirs-at-law upon the ground that the conveyance was impliedly fraudulent.

4. **Conveyances—Confidential Relation—Implication of Fraud.**—The mere fact that the grantor was the uncle of the grantee in a deed does not show such confidential relations as will raise an implication of fraud having been practiced upon the uncle in making the deed to his nephew.

BARNES & SMITH and FOGEL & FOGEL for appellants.

HEAVRIN & WOODWARD for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

Jacob C. Warden, a bachelor 75 years of age, residing in Ohio county, died in January, 1911. On and between December 18, 1909, and November 26, 1910, he had conveyed five tracts of land to his collateral kindred. By the first deed dated December 18, 1909, he conveyed 15 acres to L. R. Goodall, who was the husband of Warden's niece, for a recited consideration of $300. A second deed was executed by Warden on September 6, 1910, and conveyed 32 acres to his nephew, Jacob B. Warden, the recited consideration being services rendered by said Jacob B. to his uncle. By the third deed, dated October 12, 1910, Warden conveyed 8½ acres to L. R. Goodall, the husband of Warden's niece, for a recited consideration of $300. The fourth deed was dated November 26, 1910, and conveyed 20 acres of land to E. H. Goodall as grantee, but really in trust for Jesse M. Warden, a nephew of the grantor, for a recited consideration of $300 paid. The fifth and last deed dated November 26, 1910, conveyed three-fourths of an acre of land to Jessie Phipps, a grand niece of Warden, for a recited consideration of $200. The petition alleges that none of the recited considerations was paid.

On January 4, 1912, the appellants, Sally Shacklette, M. L. Phipps and Laura Greenwood, as heirs-at-law of Jacob C. Warden, brought this action against the several grantees in the deeds above named, for the purpose of having said deeds canceled and set aside, upon the ground that they were without consideration, and had been procured by the undue influence, fraud and collusion of the several grantees therein. Upon motion of the defendants, the circuit court required the plaintiffs to elect which, of the several actions alleged to have been wrongfully joined in the petition, they would prosecute; and, in response to that ruling, the plaintiffs elected to prosecute the action to cancel and set aside

the fourth deed, dated November 26, 1910, which conveyed 20 acres to E. H. Goodall, in trust for Jesse M. Warden, as above set forth.

The first paragraph of the answer traversed the allegations of the petition, while the second paragraph affirmatively alleged that for many years prior to November 26, 1910, the date of the deed, Jesse M. Warden had rendered personal service, labor, care and attention to and for Jacob Warden, and at his special instance and request; and that for and in consideration of said services, and in part payment therefor, Jacob C. Warden had executed and delivered to Goodall, as trustee, the deed sought to be canceled. The reply made the issue, by controverting the affirmative allegations of the answer.

The action having been submitted and heard upon the pleadings, without any proof, the circuit judge dismissed the petition, and from that judgment the plaintiffs prosecute this appeal.

The correctness of the judgment of the circuit judge depends upon where the burden of proof lay. Appellants admit, that in cases of actual fraud the burden of proof is on the party complaining, to prove his case; but he invokes the contrary rule applicable to cases of fraud to be implied from the fiduciary or confidential relation of the parties, where the burden is on the person against whom complaint is made to show the entire fairness of the transaction.

If the facts alleged in the petition were sufficient to put the defendants upon their proof, notwithstanding their answer, the burden was upon them, and the trial judge was wrong in dismissing the petition.

This case, if it can be maintained, comes under the third species of fraud according to Lord Hardwicke's classification in the leading case of Chesterfield v. Janssen, 2 Ves., 125; 1 Lead. Cas. Eq., 428, which is presumed from the circumstances and conditions of the parties contracting. The general rule is, that relief will be afforded, in equity, in all transactions in which influence has been acquired and abused—in which confidence has been reposed and betrayed. The relief stands upon a general principle applying to all the varieties of relations in which dominion may be exercised by one person over another. And, the presumption of fraud will arise more readily in cases of gifts, than in cases of contracts.

The question always is, to what extent may undue influence be presumed from the relation of the parties? This presumption of undue influence is more or less strong, according to the nature of the relation which the parties occupy towards each other. The relation in which the presumption exists, perhaps, in the highest degree, is that of solicitor and client; the next highest, that of guardian and ward; then, that between parent and child, and trustee and *cestui que trust*.

In cases of contract between lawyer and client, the burden is on the lawyer of showing its fairness. Carter v. West, 93 Ky., 211. And the same rule applies to the case of gift from the ward to his guardian, immediately after the ward has attained his majority, or while he is still under the guardian's influence.

But, in the case at bar, none of these fiduciary or confidential relations existed. While it is true the grantor was 75 years of age, that fact would not, of itself, raise a presumption of incapacity on his part, or undue influence on the grantee's part.

Appellants rely upon Smith v. Snowden, 96 Ky., 32; Wilson v. Winsor, 24 Ky. L. R., 1343, 71 S. W., 495; Highland v. Highland, 24 Ky. L. R., 2242, 73 S. W., 791; Koger v. Koger, 29 Ky. L. R., 235, 92 S. W., 961, and Hoeb v. Maschinot, 140 Ky., 330.

In Hoeb v. Maschinot, *supra*, the rule governing cases of this character was stated as follows:

"Where there exists between two persons a relation of confidence and trust, by which one exerts such an influence over the judgment of the other as to subvert the latter's will and independence, a conveyance by the latter to the former will be set aside as fraudulent upon seasonable complaint. Whether such influence was exerted is a question of fact to be determined from the circumstances. Evidence of the fact may consist of such relationship of blood, or consanguinity, or as attorney and client, guardian and ward, physician and patient, and the like, and when such relationship is shown, and a voluntary conveyance beneficial to the grantee, the burden of proving that in that transaction, the other mind acted freely, of its own volition, is on the person benefited, or the conveyance will be set aside. (Smith v. Snowden, 96 Ky., 32; Maze's Ex. v. Maze, 30 Ky. L. R., 679.) The reason of the rule is, it is not customary for people to give away their property, particularly to strangers in blood. It is also known that one who has

the entire confidence of another can induce the latter to do with his property, that which a stranger could not. Every day observation is full of incidents of overreaching of that character. Such abuse of confidence is in law a fraud.''

It will be noticed that the rule as above formulated applies to cases in which there has been a voluntary conveyance which is beneficial to the grantee. And, in examining the cases relied upon by appellants, it will be found in each case, not only that a confidential relationship existed, but that the deed was without consideration, and was beneficial to the grantee.

In Smith v. Snowden, *supra,* a father and mother, over 70 years of age, conveyed their land to two of their sons, without any consideration, it being pointed out that not even the consideration of love and affection was hinted at.

Likewise, in Wilson v. Winsor, *supra,* a husband and his wife conveyed the wife's land to the husband's brother, for the purpose of preventing her children from receiving any benefit therefrom; and, as it was without consideration, and really for the husband's ultimate benefit, the court declared it fraudulent.

A similar state of facts controlled Highland v. Highland, *supra.* In that case the husband and his wife conveyed her land to Higbee, and Higbee conveyed it back to the husband, there being no consideration for either conveyance, and the purpose and effect of the two deeds being to convey the wife's land to the husband.

Again, in Koger v. Koger, *supra,* William Koger, Sr., at the age of 86, conveyed his land, for no consideration, to two of his sons, leaving ten of his children and two grandchildren of a deceased daughter, unprovided for.

And, in Hoeb v. Maschinot, *supra,* the conveyance was from the mother-in-law to her son-in-law, and without consideration.

It will be noticed, therefore, that the cases relied upon by appellants all come within the rule as above sated in Hoeb v. Maschinot, which imputes fraud in cases of voluntary conveyances made between persons who stand in confidential or fiduciary relations to each other. We do not mean to say that the rule is confined in its operation to cases in which there is no consideration, since there may be cases calling for its application, in which the consideration might be so grossly inadequate

as to render the conveyance fraudulent, when the other conditions required by the rule are found to exist.

In the case at bar, however, the answer expressly alleges that although the deed, perhaps incorrectly, recites a consideration of $300.00, cash paid, there was, in reality, a valuable consideration for the deed in the services which the nephew had theretofore rendered his uncle, which were of greater value than the land conveyed. This allegation of consideration is not in conflict with the terms of the deed, which recites a consideration of $300.00 in cash, since it is not uncommon for parties to a contract to treat the satisfaction of a debt as a payment in money or cash.

Moreover, there is nothing in the case to show there were any confidential relations between Jacob C. Warden and his nephew, more than are implied in the mere fact of kinship; and, if any presumption is to arise from the bare statement of that relationship, it would be that the uncle was the stronger character of the two.

The pleadings, as we view them, present a case of actual fraud rather than a case of implied or constructive fraud; and, since the rule requires a plaintiff who charges actual fraud to make out his case, the burden was upon appellants, and the circuit judge properly so ruled. Hunt v. Nance, 122 Ky., 282.

Judgment affirmed.