## Davidson, et al. v. Davidson, et al.

(Decided April 18, 1918.)

### Appeal from Perry Circuit Court.

1. Deeds—Undue Influence—Burden of Proof.—The law looks with suspicion upon the transfer of property by persons mentally or physically infirm to those having custody of or residing with them, and where there exists between the transferer and transferee the relationship of confidence and trust, in a suit seeking a cancellation of the conveyance the burden is on the one benefited thereby to show that the transaction was freely and voluntarily entered into by the one whose capacity is questioned, and that it was without undue influence exercised upon him, and void of any other vitiating facts or circumstances.

2. Deeds—Undue Influence—Burden of Proof.—A mother 84 years of age conveyed her property to two of her sons, one of whom resided with her on the property and the other in a separate house upon the same piece of property. At the time she had been crippled for nearly twenty years and was in feeble health, and the conveyance was expressed to be for the purpose of making her sons equal with her other heirs, which inequality was disproven, and for the further consideration that the two sons would support her during her natural life. The grantor lived about eighteen months; the deed was not recorded until after the suit was filed attacking it. A number of witnesses testified that according to their opinion the grantor was mentally incompetent to make the deed; that she was easily influenced by her two sons, and testified to other facts and circumstances indicating that she was unduly influenced and overreached in the execution of the deed. Held, that the judgment of the chancellor cancelling the deed and setting it aside was authorized, and will not be disturbed on appeal.

3. Deeds—Consideration for Future Support.—A recited consideration in a conveyance for future support, when the unerring facts show that the grantor had but a short while to live, will not be regarded as a valuable consideration.

MORGAN & NUCKOLS for appellants.

JAMES M. BARKER for appellee, Laura Combs.

MILLER, WHEELER & CRAFT for other appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This suit is an effort on the part of the appellees, who are grandchildren of Sallie Davidson, deceased, to cancel a deed which their grandmother executed to her two sons, Henry Davidson and James Davidson, on Septem-

ber 12, 1913, whereby she conveyed to appellants, who were defendants below, a lot located in the town of Hazard, Kentucky, and fronting on Main street in that town 41 feet and running back to a parallel street 160 feet. On the Main street end of the lot there was located a frame building a portion of which was used as a business house, and other parts of it used as a residence for the grantor and the defendant, Henry Davidson, and his family, who resided with her. On the other end of the lot was located a residence occupied by the defendant, James Davidson, and his family.

The recited consideration for the deed was one dollar and the desire of the grantor to make her two sons equal with the rest of her children and grandchildren in the property which it was claimed she had advanced to them, and the further promise of the grantees to support the grantor during her natural life. The prayer of the petition was that the deed be canceled and the property be sold for the purpose of division amongst the heirs and the proceeds adjudged to them according to their respective interests.

The grounds for the attack of the deed were that the grantor was mentally incapacitated to execute it, and that she was unduly influenced and overreached by the defendants to execute it. The trial court granted the prayer of the petition by cancelling the deed and ordering the land sold for the purpose of division amongst the heirs, and to reverse that judgment the defendants, who were the grantees in the deed, prosecute this appeal.

No question except one of fact is presented, and according to our view of the testimony and the law applicable thereto, as repeatedly determined by this court, there is no room for doubt as to the correctness of the judgment. The undisputed facts as disclosed by the record are that the grantor at the time the deed was executed was 84 years of age. Nineteen years before that time she sustained an accident to her hip rendering her a cripple for the rest of her life, and necessitating her using a cane or crutch in order to move about. This injury at the time and periodically afterwards gave her a great deal of pain. In addition, she was more or less afflicted with chronic diarrhoea, and during the latter years of her life, covering the period when the deed was executed, she was frequently attacked with severe coughs.

Her son, the defendant Henry Davidson, had resided with her in the same house on the lot in question since 1904, while the other defendant, James Davidson, had resided in the house located on the other end of the lot for about twenty-five years.

Since the grantor sustained her injury she filed three different suits seeking to be relieved from contracts which she had entered into, upon the ground that she was mentally incapacitated to make them. In two of the suits she was successful, while the other was compromised upon terms acceptable to the parties. In one of those suits, and about the year 1904, the defendant, James Davidson, testified that his mother on account of her physical condition and other surrounding circumstances was mentally weak and incompetent to comprehend the import of the contract with reference to the sale or disposition of her property. The other defendant, Henry Davidson, while he did not testify in that suit, was instrumental in procuring his mother to file it upon the ground that she was incompetent to make it. It is in evidence from the mouths of two witnesses, one of them being the clerk who took the acknowledgment to the deed, that it was executed in the night time between the hours of twelve and one o'clock, although this is disputed by two witnesses testifying for the defendants. The deed was not placed to record until after this suit was filed, which was something like two years from the time it was executed, the grantor having died about eighteen months after the date of the deed. It is also in evidence that the defendants, because of their relationship and associations with the grantor, had considerable influence over her, and it is likewise to be noted that the recitation in the deed of advancements having been made to the plaintiffs' parents, who were children of the grantor, without similar action toward the defendants, is not sustained by the evidence, and to this extent that declaration is incorrect. Several witnesses testified that the grantor, according to their opinion, was mentally incompetent to enter into a binding contract, while others say that according to their opinion her mind was "as good as persons of her age."

The case in which the defendant James Davidson testified as above indicated concerning the mental incapacity of his mother was that of Davidson v. Combs, and which involved a deed made to the identical prop-

erty here involved by Mrs. Sallie Davidson to Rankin and John C. Combs. Mrs. Davidson was successful in the court below, and the defendants therein appealed the case to this court and the judgment was affirmed in the case of Combs v. Davidson, 24 Ky. Law. Rep. 2528. The record in that case was introduced and considered upon the trial of this case. We have examined the testimony therein and are free to say that the evidence sustaining the grounds for relief is much stronger in the instant case than it was in that one. Notwithstanding, this court in its opinion in that case said: "In the case at bar we have an illiterate, childish, infirm, old woman living in the house with two active, alert, strong-willed men carrying on business both of practicing law and merchandising. One of them had married the favorite granddaughter of this old woman. They obtained from her a conveyance of her home for about one-half of its real value," &c.

In this case we have the same "illiterate, childish, infirm, old woman, living in the house with two active, alert, strong-willed men," but in this case they happen to be her sons, who stood in a position to exercise great influence over her, one of them being a licensed attorney and the other chief of police of the town of Hazard. Furthermore, the ravages of ten additional years had not relieved her illiteracy, but had considerably augmented her childishness, as well as her infirmity.

The law looks with suspicion upon transactions between persons sustaining confidential relation toward each other, and if the grantor is old and physically infirm, and transfers his property to one sustaining such confidential relation, and who has custody of or resides with him, the burden is cast upon the grantee to show that the transaction was freely and voluntarily entered into, and devoid of any vice rendering it inequitable or unfair. McElwain v. Russell, 11 Ky. Law Rep. 649; Smith v. Snowden, 96 Ky. 32; Shacklette v. Goodall, 151 Ky. 20; Kelly v. Fields, 167 Ky. 796; King v. Burkhart, idem, 424; Miller v. Taylor, 165 Ky. 463; Talbott v. Bedford, 21 Ky. Law Rep. 897; Koger v. Koger, 29 Ky. Law Rep. 235; Hall v. Orme, 146 Ky. 467; Bradley v. Bradley, 28 Ky. Law Rep. 1261; Gross v. Courtney, 161 Ky. 152; Herzog v. Gibson, 170 Ky. 325; Bozarth v. Banister, 143 Ky. 136, and Shields v. Burge, 171 Ky. 149.

In the Snowden case, *supra,* in dealing with this question, this court in its opinion said: "In the case under consideration the grantors were old, ignorant and enfeebled by disease; the grantees were vigorous, aggressive, and already in charge of the persons and property of the grantors. We may say in general that when such a relation exists the person obtaining the benefit must show by the clearest evidence that the transaction was freely and voluntarily entered into and devoid of inequitable incidents."

In the Shacklette case referred to it is said, *inter alia:* "Ordinarily, the burden of proving actual fraud is on the party alleging it, but where fraud implied from the fiduciary or confidential relation of the parties is charged, the burden is on the person against whom the complaint is made to show the fairness of the transaction."

Substantially the same language is used with reference to the point under consideration in all the cases referred to and they with unanimity adopt and apply the doctrine of the quotations made. It is also pointed out in the cases from this court that it is unnecessary to establish particular facts showing the exercise of undue influence by the grantee upon the grantor. For if the circumstances are such as to afford an opportunity for the exercise of such influence, and the transaction in its nature is such as to cause a suspicion of such exercise, the burden will be upon the defendant to clearly show the transaction to be free from such influence. The rule is thus stated in the case of Kelly v. Fields, *supra:*

"It would be hard to point out any particular facts showing that he exercised over his mother undue or improper influence, or that under ordinary conditions she was not capable of disposing of her property. But the circumstances connected with this transaction all tend to show that Elijah, either by undue influence or by fraud, procured his mother to make this deed, when she would not have done so if left to her own free will and judgment. . . . . When conditions such as are shown in this case exist, the burden is upon the grantee to show not only the fairness of the transaction, but that it was the free and voluntary act of a capable mind, and this we think Elijah Fields has failed to do."

It is insisted that this case does not fall within the rule discussed, because a valuable consideration is stated in the deed, viz., that the grantees were to support and

maintain the grantor during her natural life. It is, however, difficult for us to grasp the sincerity of this contention in the light of the facts presented by this record. The grantor herein is shown to have actually furnished each of the grantees a home for many years prior to the conveyance. In 1888 or 1889 she drew a pension of between $3,000.00 and $3,600.00, and continued to draw one of $30.00 per month during her life. She rented a store room located on the lot in question and it is perfectly plain that her income exceeded that of either of the grantees. They each had a family to support, while their mother had no dependents. At the time of the conveyance she had one foot in the grave, which had practically been there for nearly twenty years, and the other was close thereto and rapidly approaching. It was patent to the most stupid observer that her days were numbered, and under such circumstances the agreement to support will not be dignified by the law as a valuable consideration, for, as said in the case of McDowell v. Edwards, 156 Ky. 475, in discussing this phase of such a conveyance:

"Furthermore, it will be observed in this case that the consideration for the deed to appellant was practically nothing, in view of the clearly apparent fact that Edwards was upon his deathbed at the time the contract was made, and could not possibly live longer than a few days or weeks at the most. This fact, taken in connection with the other circumstances attending the transaction, fully justified the chancellor in cancelling the contract."

It is our conclusion, therefore, that the facts authorized and the law justified the judgment rendered by the trial court.

Complaint is also made that the judgment should have gone no further than to set aside the deed and should have left the question of advancements for future adjustments between the parties. This perhaps would have been correct if the question of advancements had been raised by the pleadings, but they are entirely silent upon that subject, and it is too late to attempt to raise it in this court, since the law recognizes that there is a time for all things, even to the presentation and litigation of disputed questions.

Wherefore, the judgment is affirmed.